UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL CENTER OPERATING CO, LTD, *et al.*, | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-09-2185 |
| | § | |
| PRINCIPAL LIFE INSURANCE COMPANY, | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Pending before the Court is the plaintiff's, North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating Company CP, LLC, motion to supplement (Docket Entry No. 96) their motion for summary judgment (Docket Entry No. 81), and reply in support (Docket Entry No. 93). The defendant, Principal Life Insurance Company, filed a response to the plaintiffs' supplement (Docket Entry No. 97), to which the plaintiffs replied (Docket Entry No. 98). After having carefully reviewed the motion, the responses, the record and the applicable law, the Court denies the plaintiffs' motion and issues further instructions detailed in this Memorandum Opinion and Order.

**II.   Factual Background**

This case concerns a health insurance dispute regarding 106 emergency room ("ER") claims. Of the 106 claims, 103 involved the defendant's group insurance policies, and 3 involved health plans administered by the defendant.[1] The plaintiffs operate a general, acute care hospital

---

[1] As best as the Court can discern, the 3 claims involving medical plans are claims 101/18, 106/474, and 107/152.

and qualify as providers of healthcare and medical services under the Employee Retirement Income Security Act ("ERISA").[2]

The plaintiffs provided medical care in their ER to the 106 patients who are insured by and/or subscribers to the defendant's health insurance policies and/or plans, but the plaintiffs are not within the defendant's network of preferred providers. The plaintiffs also qualify as a "participating hospital" under the requirements of the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"),[3] which requires them to provide appropriate medical screening in their ER facilities to any patient who requests examination, notwithstanding their ability to pay.

Patients pay different deductibles, copayments, and out-of-pocket expense levels for most treatment or services provided by preferred or in-network providers versus non-preferred or out-of-network providers. However, for Medical Emergency services, the defendant's policies and plans provide benefits at Preferred Provider rates. When the plaintiffs submitted these 106 claims to the defendant, the defendant generally contracted with at least one nurse or doctor to review the files and determine whether each claim was a Medical Emergency. The Court has jurisdiction over this dispute pursuant to, *inter alia*, 28 U.S.C. § 1331.

III.    Contentions of the Parties

    A.    The Defendant's Contentions

The defendant contends that these 106 claims were for "Emergency Room Services" rather than "Medical Emergencies," and that therefore they were payable at the non-preferred levels of 110% of the Medicare/cost basis. It asserts that it paid the claims correctly in

---

[2] 29 U.S.C. § 1001, *et seq.* In an effort to maintain the parties' citation method, the Court will henceforth refer to the relevant ERISA citations as "ERISA § ___."

[3] 42 U.S.C. §§ 1395(dd), *et seq.*

accordance with the terms of its policies and plans, and that it is not liable for charges for which the patients themselves are not liable. It claims that the plaintiffs lack standing to bring their claims and that they failed to exhaust their administrative remedies. It maintains that the plaintiffs must show that the defendant abused its discretion to recover under ERISA § 502(a)(1)(B), and that they may not seek to recover simultaneously under ERISA Sections 502(a)(1)(B) and 502(a)(3). It argues that the plaintiffs do not have viable claims for the defendant's alleged: (1) policy/plan violations; (2) failure to fully and fairly review its policies/plans; (3) breach of a discount agreement; and (4) breach of fiduciary duties. Lastly, it avers that the Patient Protection Affordable Care Act ("PPACA")[4] is inapplicable to most of the 106 claims, and that certain of its payment methods are proprietary information.

### B. The Plaintiffs' Contentions

The plaintiffs contend that even though they were out-of-network providers, the defendant should have paid the 106 claims at in-network levels because they were Medical Emergencies. The plaintiffs allege that the defendant knowingly and intentionally violated federal law by arbitrarily reducing the amounts it was supposed to pay the plaintiffs for the contested ER claims. The plaintiffs seek to recover benefits under ERISA § 502(a)(1)(B), or alternatively ERISA § 502(a)(3). Claiming that all conditions precedent have been met, they assert counts for: (1) failure to comply with the group policies/plans; (2) breach of fiduciary duties;[5] (3) failure to provide a full and fair review;[6] (4) claims procedure violations;[7] (5) a

---

[4] 42 U.S.C. § 300gg-19a.

[5] ERISA § 502(a)(3).

[6] ERISA § 503.

[7] ERISA § 502(a).

request for information;[8] (6) improper usual and customary rate ("UCR") calculations;[9] (7) relief under Federal Rule of Civil Procedure 54(c).[10]

## IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden

---

[8] ERISA § 502(c)(1)(B).

[9] ERISA § 502(a), and PPACA, 42 U.S.C. § 300gg-19a.

[10] In an earlier Order (Docket Entry No. 94), the Court dismissed the plaintiffs' state and common law claims. To the extent that the plaintiffs now seek reconsideration of that Order, the Court denies their motion for reconsideration.

"with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

The Court denies the plaintiffs' motion for summary judgment and orders that the parties separately submit a synopsis of each of the 106 claims, as specified below, within 60 days of this Order.[11] No response or reply documents will be accepted.

In order to further clarify this confusing conglomeration of disputes, the Court sets the following parameters: (1) the plaintiffs have standing to bring this case; (2) the plaintiffs may argue for relief under ERISA § 502(a)(1)(B), or in the alternative, ERISA § 502(a)(3), but not both; (3) the plaintiffs do not have to prove exhaustion of administrative remedies for each underlying claim; (4) the parties' next submissions to the Court will argue only whether/when "Medical Emergency" and "Emergency Room Services" are mutually exclusive terms, and whether the out-of-network plaintiffs are entitled to preferred provider rates for each of the 106 ER claims. The Court will not address the competing methods of calculating appropriate payments until it determines whether it needs to do so after reading the parties' next submissions.[12]

### A.     Standing

The Court determines that the plaintiffs have standing to bring this suit. "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir. 2005) (citing *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891-92 (5th Cir. 2003)) ("an

---

[11] Without evidence as to each of the 106 claims, the Court cannot grant summary judgment. *See El Paso Healthcare Sys. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 479 (W.D. Tex. 2010).

[12] Accordingly, at this juncture, the Court declines to address the issues of whether/how the PPACA applies to these disputes, and of whether the defendant's calculation methods are propriety. The Court also withholds judgment on any other potential peripheral claims until the present issues are resolved.

assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA"); *see also La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 535 (5th Cir. 2006) ("The assignment of benefits from patient to hospital results . . . in the transfer of the cause of action provided by §502(a) from the patient to the hospital"); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289-90 (5th Cir. 1988) (holding that under ERISA § 502(a), a health care provider has "standing to sue in federal court as an assignee of a plan beneficiary").

In all 106 claims, the plaintiffs obtained an Assignment of Benefits and Rights from the defendant's beneficiaries, insureds and/or subscribers. With this assignee status comes the plaintiffs' standing to sue the defendant under ERISA. *See Tango Transp.*, 322 F.3d at 891-92. Accordingly, the Court determines that the plaintiffs may proceed with their claims.

B.   **Alternative ERISA Claims**

The Court determines that the plaintiffs may seek relief under ERISA § 502(a)(1)(B), while seeking alternative relief under ERISA § 502(a)(3). Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . or to clarify his rights to future benefits under the terms of the plan." Section 502(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

An ERISA fiduciary, such as the defendant,[13] "can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a

---

[13] The Court determines that the defendant is a fiduciary for all 106 claims. In addition to exercising discretionary authority over the policies, it also exercises discretionary authority over the plans. In all three plans, the defendant

preponderance of the evidence." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011). The claimant "need only show actual harm and causation." *Amara*, 131 S. Ct. at 1879. Regarding Section 502(a)(3), "appropriate equitable relief" refers to "those categories of relief that . . . were typically available in equity." *Id.* at 1877.

The plaintiffs may plead these two ERISA claims in the alternative. *See* FED. R. CIV. P. 8(d). However, they may not simultaneously seek to recover plan benefits under both Sections 502(a)(3) and 502(a)(1)(B). *Middleton v. Life Ins. Co. of N. Am.*, 2010 U.S. Dist. LEXIS 12683, * 15 (S.D. Tex. 2010) ("It is well-settled in the Fifth Circuit that 'an ERISA plaintiff may bring a private action for breach of fiduciary duty [under ERISA § 502(a)] *only* when no other remedy is available under [ERISA § 502]'" (quoting *Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). Stated differently, Section 502(a)(3) is a "catchall" provision that provides relief for injuries not otherwise addressed under ERISA. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Thus, success on their Section 502(a)(1)(B) claims precludes any recovery under 502(a)(3), but if the plaintiffs are unable to recover under its alternative Section 502(a)(1)(B) claims, they may seek relief under Section 502(a)(3). *See* FED. R. CIV. P. 8(d).

### C.  Exhaustion of Administrative Remedies

The Court determines that the plaintiffs did not need to exhaust their administrative remedies on all 106 claims, because their attempts to do so would have been futile. True, in general, an ERISA plaintiff must exhaust its remedies before pursuing a claim in federal court.

---

exercises discretionary authority over the management of the plan, the disposition of plan assets, claim adjudication, and coverage and reimbursement determinations. Pursuant to the terms of the administrative services only ("ASO") agreements/contracts, the plan sponsors *de facto* delegate to the defendant discretionary authority over each of the plans to: (1) determine eligibility and enrollment for coverage according to the information the employers provide; (2) make factual determinations; (3) interpret plan provisions to make coverage determinations on claims for plan benefits; (4) conduct a full and fair review of each denied claim; (5) decide certain appeals; (6) notify the member or his authorized representatives of its decision. Thus, the defendant exercises discretionary authority and/or control over the three contested plans. *See Blake v. Metro Life Ins. Co.*, 415 Fed. Appx. 571, 573(2011) (citing *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995)).

*Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). The exhaustion requirement is true even when a breach of fiduciary duty claim is actually a disguised claim for benefits. *Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, 339 (5th Cir. 2006) (citing *Simmons v. Wilcox*, 911 F.2d 1077, 1081 (5th Cir. 1990)). Thus, a federal court should generally not address an ERISA claim if the claimant fails to raise the issue before the plan administrator, because the Court lacks the ability to review the administrator's determination for an abuse of discretion. *Harris v. Trustmark Nat'l Bank*, 287 Fed. Appx. 283, 288 (5th Cir. 2008) (citing *Pub. Citizen, Inc. v. United States Envtl. Prot. Agency*, 343 F.3d 449, 461 (5th Cir. 2003) ("[a]bsent exceptional circumstances [in the agency law context], a party cannot judicially challenge agency action on grounds not presented to the agency at the appropriate time during the administrative proceeding.")).

However, a plaintiff may be excused from exhausting administrative remedies under ERISA if it would have been futile to do so. *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1302 (5th Cir. 1985). Although the plaintiffs did not exhaust their administrative remedies on each individual claim, they did try to do so on numerous claims. Furthermore, this dispute centers on a recurring and fundamental disagreement regarding how these 106 claims are to be classified and paid – as Medical Emergencies or as ER Services. Thus, the Court determines that the plaintiffs did not need to exhaust their administrative remedies before bringing this suit because such attempts would have been futile.

    **D.    The Policy/Plan Terms**

The central issue is whether the 106 patient claims are Medical Emergencies or Emergency Room Services, and that issue presupposes that a distinction exists between those two terms. The precise differences, if any, between Medical Emergencies and ER Services is not

detailed in the policies or plans, and whether such a difference exists is a question of fact to be decided in each individual claim. The policies contain the following language:[14]

> **Medical Emergency.** If you or one of your dependents require treatment for a Medical Emergency, either within the ["Preferred Provider Organization ("PPO")] Service Area or outside the PPO Service Area, and cannot reasonably reach a Preferred Provider,[15] benefits for such treatment received for that Medical Emergency will be paid as if the treatment had been provided by a Preferred Provider. Treatment or Service for conditions other than that which created the Medical Emergency will be paid at the Non-PPO level.[16]
>
> **Medical Emergency** means the sudden on-set and severity, including but not limited to severe pain, of a medical condition that would lead a prudent lay person possessing average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care could result in:
> - placing [your] health . . . in serious jeopardy;
> - serious impairment to bodily functions . . .;
> - serious dysfunction of any bodily organ or part, or
> - serious disfigurement.[17]
>
> **Emergency Room Services:**
> Covered Charges will include charges for Treatment or Service received in an [ER]. Benefits payable for Treatment or Service at an [ER] will be subject to Co-pays, Deductibles, and coinsurance in the following order:
>     First, the [ER] Copay[18] will be applied; and
>     Then, the calendar year Deductible;[19] and

---

[14] To the extent that the 3 plans differ in any relevant fashion from the policies, the Court acknowledges such differences in the footnotes.

[15] A "Preferred Provider means a Hospital, Physician, or other provider contracted with the [PPO] network established by the PPO, indentified in your I.D. card."

[16] The 3 contested plans contain substantially similar language:
> Medical Emergency.
> If you or one of your Dependents requires treatment for a medical emergency and cannot reasonably reach a PPO Provider, benefits for such treatment received will be paid at the same level as a PPO provider.

[17] The three contested plans contain similar definitions. The Court leaves it to the parties to highlight any salient differences in their forthcoming motions.

[18] The policies define "Copay" as "A specified dollar amount that must be paid by a Member or Dependent each time certain or specified services are rendered."

[19] The policies define "Deductibles" as "A specified dollar amount of Covered Charges that must be incurred by the Member or Dependent before benefits will be payable under this Group Policy for all or part of the remaining Covered Charges during the calendar year."

> Last, the Member's or Dependent's coinsurance percentage will be applied.
> The [ER] Copay amount, if any:
> will be waived if the insured is admitted to the Hospital immediately following [ER] treatment; and
> will not count toward satisfaction of the calendar year Deductible.

In sum, a Medical Emergency is to be paid "as if the treatment had been provided by a Preferred Provider," whereas other treatments or services are paid at the lower, out-of-network levels. To the extent that a difference exists between Medical Emergencies and ER Services for any given claim, the benefits for ER Services "will be subject to Co-pays, Deductibles, and coinsurance."

The defendant attempts to distinguish between Medical Emergencies and ER Services by citing to the *post hoc*, objective determination of a nurse or doctor as to whether the patient was truly experiencing a Medical Emergency, instead of some lesser condition or ailment. Conversely, the plaintiffs rely upon the individual patient's subjective belief, as a "prudent lay person possessing average knowledge of medicine and health," that they were undergoing a Medical Emergency when they sought the more expensive ER Services. They argue that, unlike completely uninsured people, insured customers with access to a numerous in-network providers would not utilize the plaintiffs' costly ER for a non-Medical Emergency. If a salient distinction exists between Medical Emergency and ER Services in the policies and plans, the extent to which the defendant abused its discretion by applying that possible distinction to the 106 underlying claims affects the proper amount of coverage due.

E. Motions Plan

In keeping with the unambiguous language of the policies, the Court determines that the "prudent lay person" policy language is the appropriate standard to use.[20] *See Nat'l Union Fire*

---

[20] *See* fn. 17.

*Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n.28. The next difficulty that arises is determining the fact issue of whether all 106 patients exercised the judgment of the prudent lay person rather than, say that of an imprudent hypochondriac. *See Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). A potential Medical Emergency begins in the mind of the individual patient, and the Court does not want to dis-incentivize ERs from treating prudent patients who genuinely believe that they are suffering a Medical Emergency, regardless of whether they are ultimately deemed in dire need of emergency treatment. Nor does the Court want to incentivize ERs to over-treat patients who are not suffering Medical Emergencies simply to increase the likelihood of receiving more money.

Accordingly, the Court must consider all 106 claims individually, looking to the patients' prior medical history and any extenuating circumstances documented in the administrative records. The Court thus orders the parties to each submit a synopsis of all 106 claims, of 100 words or less per claim, stating the basis for the individual patient's subjective belief, or the basis upon which a prudential layperson's judgment to go to the ER for their maladies was appropriate or not. The central question is not whether the patient was indeed experiencing a Medical Emergency, but whether a prudent lay person would have thought he was experiencing a Medical Emergency when he went to the ER, regardless of his ultimate diagnosis. While the diagnosis is some evidence, it does not trump symptomology. The parties are to exclude any extraneous expert testimony and limit their presentations solely to the information available in the administrative record of each claim.

The Court will evaluate the defendant's interpretation of the 106 claims under the abuse of discretion standard. *Spacek v. Maritime Ass'n*, 134 F.3d 283, 292-93 (5th Cir. 1998); *Wildbur*

*v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992).[21] Three factors are important in determining whether a defendant's incorrect interpretation of the plan was an abuse of discretion: "(1) the internal consistency of the plan under the interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of a lack of good faith." *Wildbur*, 974 F.2d at 638. If denial of benefits is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary or capricious, and therefore is not an abuse of discretion. *See Corry v. Liberty Life Assur. Co.*, 499 F.3d 389, 397-98 (5th Cir. 2007); *Wildbur*, 974 F.2d at 635 n.7 (equating the abuse of discretion standard with the arbitrary or capricious standard) (internal citations omitted).

The defendant's decisions do not constitute abuses of discretion if those decisions are based on "concrete evidence in the administrative record." *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) (internal citation omitted). The plaintiffs bear the burden of showing that there was an absence of evidence supporting the defendant's decisions – not that there is evidence to support their claims. *See Ellis v. Liberty Life Ass. Co.*, 394 F.3d 262, 273 (5th Cir. 2004) (internal citations omitted).

In reviewing the defendant's decisions, the Court limits its review to considering only evidence in the administrative record available to the defendant at the time it made its decisions.

---

[21] The abuse of discretion standard arises from, *inter alia*, the terms of the policies themselves, which state that:

> The [defendant] has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of [the defendant] in such matters shall be controlling, binding, and final as between [the defendant] and persons covered by this Group Policy, subject to the Claims Procedures in PART IV, Section C.

The inclusion of this discretionary language requires the Court to review the defendant's coverage determinations under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989) ("we hold that a denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan"); *see also Whittaker v. Bellsouth Telecomm., Inc.*, 206 F.3d 532, 534 (5th Cir. 2000).

*See Gooden*, 250 F.3d at 333; *Vega v. National Life Ins. Servs.*, 188 F.3d 287, 289 (5th Cir. 1999) (overruled on other grounds). "[W]e will not permit the district court or our own panels to consider evidence introduced to resolve factual disputes with respect to the merits of the claim when the evidence was not in the administrative record." *Vega*, 188 F.3d at 299-300.

Additionally, the Court must consider whether the defendant was operating under a conflict of interest. "A plan administrator that both evaluates claims for benefits and pays benefits claims operates under a 'conflict of interest.'" *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). Thus, "[i]f a plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether an abuse of discretion occurred." *Firestone Tire and Rubber Co.*, 489 U.S. at 115 (internal quotation omitted). The Court will weigh this alleged conflict of interest against the defendant's expressed intent to steer patients to preferred providers, incentivizing them with better coverage levels in order for the defendant to control its costs.

## VI. Conclusion

Based on the foregoing discussion, the Court DENIES the plaintiffs' motion for summary judgment, and ORDERS the parties to make the above-detailed additional filings.

It is so **ORDERED**.

SIGNED at Houston, Texas this 9th day of February, 2012.

_____
Kenneth M. Hoyt
United States District Judge